In re **FRONTIER PROPERTIES, INC.,** **Lewis W. Shurtleff, Inc., Debtors.**

**Thomas D. ELLIOTT, Trustee,** **Appellant,**

v.

**FOUR SEASONS PROPERTIES, a Utah limited partnership; Zions First National Bank, Appellees.**

**No. 91–55502.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 8, 1992.

Decided Nov. 18, 1992.

Kevin J. Hoyt, Estes & Hoyt, San Diego, Cal., for appellant.

Candace M. Carroll, Sullivan, Hill, Lewin & Markham, San Diego, Cal., for appellees.

Before: BOOCHEVER, NORRIS, and NOONAN, Circuit Judges.

BOOCHEVER, Circuit Judge:

Thomas Elliott is the trustee for Chapter 11 debtors Frontier Properties, Inc. ("Frontier") and Lewis W. Shurtleff, Inc. He appeals the district court's ruling that he waived his right to appeal whether a land sale contract between Frontier and creditor Four Seasons Properties, Inc. ("Four Seasons") was assumable and whether he actually assumed it. He also appeals the district court's affirmance of the bankruptcy court's ruling that the interest awarded to Four Seasons as part of the judgment in its state court breach of contract action was entitled to administrative priority status. While we hold that the trustee did not waive his right to appeal the assumption issue, we conclude that the contract was validly assumed. We also find that the district court correctly categorized the interest awarded in the state court action as an administrative priority.

## BACKGROUND

In November 1979 Frontier contracted to buy from Four Seasons an apartment complex in Salt Lake City, Utah. Frontier paid Four Seasons $100,000 at the close of escrow and took possession of the property. Several months later, Frontier paid an additional deferred down payment of $400,000. The balance of the $2.1 million purchase price was represented by a promissory note providing for monthly payments of principal and interest until October 30, 1984, when the entire outstanding amount be-

came due. Four Seasons was to convey title by warranty deed to Frontier upon full payment. The contract also provided that upon a default in payments, Four Seasons could elect to treat the contract as a note and mortgage, pass title to the buyer subject thereto, and immediately foreclose and seek a deficiency judgment in accordance with the laws of Utah.

In August 1981 Frontier filed a Chapter 11 bankruptcy petition. With Frontier in default on its monthly installment payments, Four Seasons sought relief from the automatic stay so that it could foreclose. Alternatively, Four Seasons sought an order requiring Frontier to cure its defaults and elect either to assume or reject the contract. This proceeding resulted in a stipulated relief from the stay, which the bankruptcy judge then entered as an order. The stipulation gave the trustee 60 days to assume or reject the land contract. If he decided to assume, he would have 6 months to market the property. If the trustee sold the property, he could cure the defaults using the sales proceeds, but if he failed, the stay would be lifted and Four Seasons could foreclose. On January 14, 1982, counsel for Four Seasons wrote to counsel for the trustee asking that he recognize the quickly increasing deficiency owed to Four Seasons under the contract, which the trustee would have to cure if he assumed, and the diminishing possibility of realizing any equity for the estate.

On January 22, 1982, the day on which the assumption period was to expire, the trustee sent a letter to Four Seasons stating that he assumed the contract. The trustee subsequently collected all rents on the property and sought to sell it, but rejected at least two offers that were acceptable to Four Seasons. Although the stipulation gave the trustee 6 months to market the property, he was in fact permitted to market it for almost a year.

In October 1982 Four Seasons received a notice of default from one of the underlying lienholders on the property and, as permitted by the stipulation, immediately filed a complaint in Utah state court seeking foreclosure before the underlying lienholders could foreclose. The trustee then filed a motion for authority to reject the contract, claiming that the contract had never been assumed and thus his rejection constituted a rejection as of immediately prior to the date of filing the petition. *See* 11 U.S.C. § 365(g)(1) (1988). The bankruptcy court issued an order on June 16, 1983, stating that the trustee had validly assumed the contract, that his motion to reject the contract constituted a rejection governed by 11 U.S.C. § 365(g)(2)(A), and that Four Seasons' damages, if any, would be entitled to administrative priority status. The trustee's motion for reconsideration of that decision was denied. Meanwhile, the property was sold at a Trustee's Sale in February 1983.

On April 11, 1985, a Utah state court held that the trustee had assumed the contract and entered a deficiency judgment for Four Seasons in the amount of $245,132.45 plus $51,069.25 in interest through March 27, 1984, for a total of $296,201.70. The court also awarded interest on the total judgment at the rate of 12% per annum from the date of entry of judgment, as well as costs and attorneys' fees. The trustee appealed the decision, but the Utah Supreme Court affirmed.

On July 8, 1988, the trustee filed his Chapter 11 liquidation plan. Four Seasons and its assignee, Zions First National Bank, objected to the plan because it failed to give administrative priority to the interest and attorneys' fees awarded by the Utah court. On July 7, 1989, the bankruptcy court issued a Notice of Intended Decision granting administrative priority to Four Seasons' interest claim. The bankruptcy court adopted the Utah state court's findings as to the damages caused by the trustee's breach, and affirmed the 1983 ruling that the trustee had validly assumed the contract.

The trustee then appealed to the district court, which affirmed the bankruptcy court's decision on the interest issue and held that the trustee had waived the assumption issues. The trustee timely filed this appeal on November 16, 1990. We

have jurisdiction under 28 U.S.C. § 158(d) and 28 U.S.C. § 1291.

## DISCUSSION

### I. Standard of Review

We review conclusions of law of the bankruptcy court and the district court *de novo. In re Dewalt,* 961 F.2d 848, 850 (9th Cir.1992); *In re Professional Inv. Properties of Am.,* 955 F.2d 623, 626 (9th Cir. 1992); *In re Worcester,* 811 F.2d 1224, 1229–30 (9th Cir.1987). The issues before this court—waiver, assumption, and the administrative priority of interest on a postpetition claim—are issues of law and are therefore reviewed *de novo.*[1]

### II. Jurisdiction

█ The district court held that the trustee waived his right to appeal the issue of whether the trustee had assumed the land sale contract by not appealing the bankruptcy court's order of June 23, 1983. That order stated that the trustee had validly assumed the contract and that Four Seasons had administrative priority status for any damages that might subsequently be proved in its state court claim. The district court found that the 1983 order was "final in nature," and thus the trustee's failure to file a timely appeal constituted a waiver of his right to appeal. The trustee argues that the bankruptcy court's 1983 order was interlocutory rather than final and that he made a timely appeal of the assumption issue after the bankruptcy court issued its final order in 1989. We agree with the trustee.

Jurisdiction over an appeal from an order of a bankruptcy court is governed by 28 U.S.C. § 158. That section vests jurisdiction in the district court to hear appeals from "final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges." 28 U.S.C. § 158(a) (1988). Thus only "final" rulings of the bankruptcy court may be appealed as of right. The final judgment rule was designed to prevent piecemeal litigation, conserve judicial energy, and eliminate delays caused by interlocutory appeals. *Catlin v. United States,* 324 U.S. 229, 233–34, 65 S.Ct. 631, 634, 89 L.Ed. 911 (1945). " 'The case is not to be sent up in fragments....' " *Id.* at 234, 65 S.Ct. at 634 (quoting *Luxton v. North River Bridge Co.,* 147 U.S. 337, 341, 13 S.Ct. 356, 358, 37 L.Ed. 194 (1893)).

A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin,* 324 U.S. at 233, 65 S.Ct. at 633; *see* 9 James W. Moore et al., *Moore's Federal Practice* ¶ 110.08[1] (2nd ed. 1990) (final judgment "disposes of the entire litigation ... or ... disposes of a complete claim for relief or all the claims of a party"). The bankruptcy court's 1983 order did not end the litigation on the merits, but rather left key issues of liability and damages for further determination. Although the court determined that there was potential liability on the part of the trustee, the actual amount of damages, if any, was left to the future determination of the Utah state court. Because damages had not yet been determined, the 1983 order does not meet the definition of a final order. *See Sun Shipbuilding & Dry Dock Co. v. Benefits Review Bd.,* 535 F.2d 758, 760 (3d Cir.1976) ("It is a well-established rule of appellate jurisdiction ... that where liability has been decided but the extent of damage remains undetermined, there is no final order."); *cf. Catlin,* 324 U.S. at 233, 65 S.Ct. at 634 (final decision in condemnation proceedings is one which adjudicates all rights, "including ... just compensation"); 9 Moore et al., ¶ 110.08[1] ("In the simple model of an action for money, a final judg-

---

1. Four Seasons relies on *In re Mark Anthony Constr., Inc.,* 78 B.R. 260, 264 (Bankr. 9th Cir. 1987), *rev'd,* 886 F.2d 1101 (9th Cir.1989), to suggest that the bankruptcy court's allowance of an administrative claim for interest is reviewed only for abuse of discretion. Without addressing the issue of the proper standard of review, the Bankruptcy Appellate Panel in that case concluded that "the trial court did not abuse its discretion in refusing to recognize a claim for interest." Inasmuch as the issue is controlled by statutory interpretation and application, we do not believe that the *Mark Anthony* court intended to establish abuse of discretion as the proper standard of review.

ment for the plaintiff [at common law] was a judgment *for a particular sum and costs.*" (emphasis added)). "Judicial economy, the interest underlying the finality rule, [is] better served by postponing review until the amount of damages has been adjudicated." *Sun Shipbuilding,* 535 F.2d at 761.

Moreover, the actual allowance of damages as an administrative expense priority depended on a subsequent final order of the bankruptcy court. Thus the 1983 ruling was a prospective one affecting the priority of a potential claim, and further activity of the parties was required before their rights were conclusively determined.

■ Four Seasons points out that this court has repeatedly held that the finality rules are to be given additional flexibility in the context of bankruptcy proceedings. *See, e.g., In re Victoria Station, Inc.,* 840 F.2d 682, 683 (9th Cir.1988); *In re Martinez,* 721 F.2d 262, 265 (9th Cir.1983); *In re Mason,* 709 F.2d 1313, 1316 (9th Cir. 1983). We have observed that "certain proceedings in a bankruptcy case are so distinctive and conclusive either to the rights of individual parties or the ultimate outcome of the case that final decisions as to them should be appealable as of right." *Mason,* 709 F.2d at 1317. Thus, in addition to the conventional test of finality, we have adopted in bankruptcy proceedings a practical test " 'that emphasizes the need for immediate review, rather than whether the order is technically interlocutory.' " *In re Allen,* 896 F.2d 416, 418 (9th Cir.1990) (quoting *In re 405 N. Bedford Drive Corp.,* 778 F.2d 1374, 1377 (9th Cir.1985)). This "pragmatic approach" to finality in bankruptcy focuses on whether the decision appealed from "effectively determined the outcome of the case." *Martinez,* 709 F.2d at 1318. Specifically, we have held that a bankruptcy order is appealable where it 1) resolves and seriously affects substantive

rights and 2) finally determines the discrete issue to which it is addressed. *Allen,* 896 F.2d at 418–19. Traditional finality concerns still dictate, however, that "[w]e avoid having a case make two complete trips through the appellate process." *In re Vylene Enters.,* 968 F.2d 887, 895 (9th Cir. 1992).

■ Four Seasons claims that the 1983 order seriously affected its substantive rights because Four Seasons relied on the trustee's failure to appeal the 1983 bankruptcy order in deciding to pursue its damage award through litigation. It asserts that it probably would have settled or abandoned its damages claim if the claim had not been secured, rather than engaging in protracted litigation at a cost greater than the claim's unsecured value. We note that Four Seasons could have ended up with little or nothing even though its claim was secured, as the amount of damages had not yet been determined. Moreover, Four Seasons' argument confuses an effect on strategic litigation decisions with an effect on substantive rights. The concern behind the "pragmatic approach" is that "[b]ankruptcy orders that determine and seriously affect substantive rights may cause irreparable harm to the losing party if a party must wait sometimes years until the end of the bankruptcy administration before taking an appeal." *Victoria Station,* 840 F.2d at 683. This concern is not implicated by Four Seasons' tactical choice to pursue litigation based on its belief that the bankruptcy court had finally decided the assumption issue.[2] Nor is it relevant where, as here, the parties must engage in protracted litigation before the bankruptcy court's order will have any direct impact in the case.

■ Finally, Four Seasons' argument is at odds with the purpose of our flexible approach to finality. The "pragmatic approach" was designed to add an opportuni-

---

**2.** Although not relevant to a jurisdictional analysis, Four Seasons' reliance on the trustee's failure to appeal and his actions in conformity with a valid assumption raise the issue of whether the trustee should be estopped from denying his assumption of the contract. Because we decide that the trustee assumed the contract, we need

not decide the estoppel issue. *But see In re J.F. Hink & Son,* 815 F.2d 1314, 1318 (9th Cir.1987). For the same reason, we need not decide whether the trustee, by his actions and statements in the bankruptcy and district courts, waived the right to appeal the assumption issues.

ty for appeal in bankruptcy proceedings at the interlocutory stage, not to create less opportunity by making interlocutory appeal exclusive. Moreover, our approach is concerned with preventing "irreparable harm to the losing party" rather than any prejudice to the prevailing party (Four Seasons here) from delayed appeal. *Id.* We reject an application of this approach that would require any point that is determined in either party's favor in an interlocutory order in bankruptcy to be appealed immediately or forever waived.

■ While interlocutory appeal from the 1983 order may have been available with leave of the district court, *see* 28 U.S.C. § 158(a) (1988), we have never held that failure to appeal an interlocutory order barred raising the decided issue after entry of a final judgment. Rather, where an issue is determined in an interlocutory order and later incorporated into a final order, the determination of the original issue is appealable upon an appeal of the final order, thereby providing the district court with an " 'ultimate review on all the combined issues.' " *In re Stanton,* 766 F.2d 1283, 1287–88 (9th Cir.1985) (citations omitted); *see Baldwin v. Redwood City,* 540 F.2d 1360, 1364 (1976) ("[A]n interlocutory appeal is permissive, not mandatory. When an appeal is not taken, the interlocutory order merges in the final judgment and may be challenged in an appeal from that judgment."), *cert. denied,* 431 U.S. 913, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977). Here, the bankruptcy court's 1989 order incorporated the finding that the trustee had assumed the contract, and the assumption issue is properly raised on this appeal from that order.

### III. Validity of Assumption

In reviewing decisions of the district court, we may affirm on any basis supported by the record, even if the district court relied on the wrong grounds or wrong reasoning. *United States v. Washington,* 969 F.2d 752, 755 (9th Cir.1992); *Marino v. Vasquez,* 812 F.2d 499, 508 (9th Cir.1987); *see Felix v. McCarthy,* 939 F.2d 699, 701 (9th Cir.1991) (issue briefed and considered in district court is properly before court on appeal), *cert. denied,* —— U.S. ——, 112 S.Ct. 1165, 117 L.Ed.2d 412 (1992). We proceed to review the underlying issue of the trustee's assumption of the contract. We agree with the bankruptcy court that the trustee assumed the contract.

### A. Executory Contract

■ Section 365 of the Bankruptcy Code provides that a trustee, subject to the court's approval, may assume or reject any executory contract of the debtor. 11 U.S.C. § 365(a) (1988). The trustee argues that the land sale contract was not executory and thus was not assumable.

The code does not define "executory contract." The Supreme Court has defined the term as a contract on which " 'performance remains due to some extent on both sides.' " *N.L.R.B. v. Bildisco & Bildisco,* 465 U.S. 513, 522 n. 6, 104 S.Ct. 1188, 1194 n. 6, 79 L.Ed.2d 482 (1984) (citation omitted). This court has defined executory contracts as those in which the obligations of both parties " 'are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.' " *In re Pacific Express, Inc.,* 780 F.2d 1482, 1487 (9th Cir.1986) (citation omitted).

The trustee cites two cases to support his contention that the land sale contract should be treated as a note and security device rather than an assumable executory contract. *In re Rehbein,* 60 B.R. 436, 440–41 (Bankr. 9th Cir.1986), reasoned that contracts for deeds are merely financing arrangements for sales that have already occurred; because the buyer has equitable title and the seller has placed the deed in escrow and retains legal title only as security for the price, the contract is not executory because the debtor has no other material obligations to perform. *In re Booth,* 19 B.R. 53, 58 (Bankr.D.Utah 1982), held that a contract for deed in which the debtor is the buyer creates an interest in the seller equivalent to that of a lien, and thus the seller is denied the special treatment afforded by 11 U.S.C. § 365.

Both *Rehbein* and *Booth* are distinguishable. *Rehbein* expressly limited its holding to situations "where the debtor has already placed the deed in escrow and has no other material obligations to perform." *Rehbein,* 60 B.R. at 441. Similarly, in *Booth,* the sellers had no unperformed obligations except the conveyance of title upon the debtor's completion of performance. *Booth,* 19 B.R. at 54. In this case, however, Four Seasons retained the deed and had other material obligations to perform, including repaying underlying debts on the property of over $1 million and paying insurance premiums, taxes, and assessments. We hold that, in these circumstances, the contract between Frontier and Four Seasons was executory and assumable.

## B. *Requirements of 11 U.S.C. § 365*

▮ The trustee further argues that his assumption was invalid because he did not file a motion seeking court approval under § 365(a) and did not provide the assurances required by § 365(b)(1) regarding cure of defaults and future performance.

The trustee relies on *Sea Harvest Corp. v. Riviera Land Co.,* 868 F.2d 1077 (9th Cir.1989), which held that a debtor in possession must file a formal motion to assume or reject an unexpired lease. In that case the debtor, who wanted to assume a lease, simply filed with the bankruptcy court documents entitled "Affirmation and Assumption of Executory Contracts." These documents were not motions for the court to do anything; rather, they merely informed the court of the debtor's intentions. *Id.* at 1079. In addition, the debtor made no attempt to serve the lessors and thereby deprived them of notice and opportunity for a hearing. *Id.* Thus this court was concerned with protecting an unknowing lessor from the consequences of an assumption of which he had no notice and which he had no opportunity to contest. *Sea Harvest* is clearly distinguishable from the facts of this case, in which the bankruptcy court approved the stipulation entered into by both the trustee and Four Seasons authorizing the contract's assumption or rejection within 60 days.

Much more on point is *In re Harris Management Co.,* 791 F.2d 1412 (9th Cir. 1986), which, like this case, involved a stipulation that settled a motion for relief from stay. The court held that the bankruptcy court's approval of this stipulation was sufficient to constitute "express approval" of the debtor's assumption. *Id.* at 1414–15.

> [T]he bankruptcy court's approval of the stipulation is plausible only as an approval of ... assumption of the ... contract. That the stipulation was not formally labeled "assumption of contract" does not detract from the substance of the underlying agreement. In light of the clear, essentially undisputed, intent of the parties ..., the bankruptcy court approved an assumption of the contract.

*Id.* at 1415.

The trustee attempts to distinguish *Harris* by arguing that "the 'whole purpose of the stipulation and order' [in *Harris*] was to effect an assumption whereas the stipulation and order in this case required future compliance with all requirements of the Bankruptcy Code at the time of assumption *if* the trustee was to effect an assumption." We find this distinction unpersuasive. The stipulation that the bankruptcy court approved specifically provided for the trustee's assumption of the contract. The approval of the stipulation indicates the court's clear intention to allow the trustee to assume the contract should he express his desire to do so within 60 days. Thus the § 365(a) requirement is satisfied.

The trustee also argues that he should be found not to have assumed the contract based on his noncompliance with the requirements of § 365(b)(1) prior to the assumption date. Section 365(b)(1) of the Bankruptcy Code provides:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default; [and]

. . . .

(C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1) (1988).

We agree with the bankruptcy court that the stipulation waived these procedural requirements. It is true that the stipulation provided that "the Trustee must perform all acts required by the Bankruptcy Code" prior to January 22, 1982, for the assumption to be valid, and that Four Seasons' counsel questioned the effectiveness of the trustee's expression of intent to assume the contract because of failure to assure compliance with § 365(b)(1). The stipulation also provided, however, that "[i]f the Trustee assumes the Land Contract . . ., he must cure completely all defaults under the Note and Land Contract *within six months from the date of such assumption.*" In addition, the stipulation provided adequate assurance of future payments by requiring that at least 50% of any net sales proceeds from other real property of the estate be set aside for payment to Four Seasons. Thus the parties thought through and discussed all of the requirements of § 365(b) and embodied them in the stipulation and order.

The trustee relies on *Sea Harvest* in arguing that strict compliance with the § 365(b)(1) requirements is necessary for an effective assumption. We reject this argument. As discussed above, *Sea Harvest* is clearly distinguishable on its facts. In that case, the debtor's only assurances of cure and future performance were contained in the empty statement, "The undersigned Petitioner recognizes the ongoing obligation to maintain such Leases and pay all obligations with regard thereto as the same arise." *Sea Harvest Corp.*, 868 F.2d at 1080. In contrast, the stipulation in this case set forth specific conditions of assumption, negotiated by the parties and approved by the court, that adequately addressed the requirements of § 365(b)(1).

We hold that the trustee validly assumed the contract on January 22, 1982, and that his subsequent rejection constituted a breach under § 365(g)(2)(A) entitling Four Seasons to an administrative claim for its damages.

### IV. Priority Status of Interest

■ The bankruptcy court's 1983 order provided that "the damages suffered by Four Seasons Properties, if any, arising out of the breach of the land sale contract constitutes an administrative priority claim against the estate of Frontier Properties, Inc." The order was silent, however, about the treatment of interest on the damages. The bankruptcy court and the district court subsequently ruled that the interest awarded in the Utah state court proceeding was to be given administrative priority in Frontier's liquidation plan. The trustee argues that the interest is not entitled to administrative priority status because interest must be subordinated to payment of other unsecured creditors pursuant to 11 U.S.C. § 726(a)(5).

Section 726(a) of the Bankruptcy Code establishes the order in which property of the estate is to be distributed in a liquidation. Although there are no provisions comparable to § 726(a) in Chapter 11, courts apply the distribution priorities under § 726(a) to Chapter 11 cases. *See, e.g., In re Shaffer Furniture Co.*, 68 B.R. 827, 829 (Bankr.E.D.Pa.1987); 4 *Collier on Bankruptcy* ¶ 726.01 (15th ed. 1992). Section 726(a) provides first for the payment of priority expenses as specified in § 507(a) (including administrative expenses allowed under § 503(b)); second, for the payment of unsecured claims; third, for the payment of late-filed unsecured claims; fourth, for the payment of fines and penalties; and fifth, for payment "of interest at the legal rate from the date of the filing of the petition, on any claim paid under paragraph (1), (2), (3), or (4) of this subsection." 11 U.S.C. § 726(a) (1988). Although § 726(a) by its terms contemplates pre-petition rather than post-petition claims such as the one in this case, recent case law has established that the section also covers interest on post-petition claims. *In re Riverside–Linden Inv. Co.*, 945 F.2d 320, 324 n. 1 (9th Cir.1991). Thus § 726(a)(5) provides for payment of post-petition interest on all

claims only as a last priority before the distribution of any surplus to the debtor. *See* 11 U.S.C. § 726(a)(6) (1988).

■ When a trustee assumes and then rejects an executory contract, however, all of the liabilities flowing from that rejection are entitled to priority as administrative expenses of the estate. *In re Multech Corp.,* 47 B.R. 747, 751 (Bankr.N.D.Iowa 1985); *In re Norwegian Health Spa, Inc.,* 79 B.R. 507, 509 (Bankr.N.D.Ga.1987). Therefore we are called upon to decide whether the interest component of the damages award to Four Seasons constitutes a liability under the contract and thus an administrative expense entitled to first priority, or "interest ... on [the] claim" receiving fifth priority under § 726(a)(5).

■ Because post-petition interest is given the lowest priority in distribution under § 726, the general rule is that interest on post-petition debts is not available in bankruptcy.[3] *In re Mark Anthony Constr., Inc.,* 78 B.R. 260, 262 (Bankr. 9th Cir.1987), *rev'd on other grounds,* 886 F.2d 1101 (9th Cir.1989). This does not suggest, however, that interest cannot be *a part of the debt itself.* The land sale contract provided for interest at 10% per annum on the unpaid balance of the contract, interest at 18% per annum on the unpaid balance of the contract after default, and the defaulting party's payment of the other party's attorneys' fees and costs. When the trustee assumed the land sale contract in 1982, he obligated himself to full performance of all of the contract's obligations, including the payment of interest at the contract rate. We agree with the bankruptcy court that these provisions were an integral component of the contract. When the trustee rejected the contract, all liabilities flowing from that rejection became administrative expenses of the estate, and all claims under the contract were therefore entitled to administrative priority. *See Multech,* 47 B.R. at 750–51.

■ The trustee argues that giving the interest first priority conflicts with the Bankruptcy Code's requirement that, for plan confirmation, each holder of a claim must receive "not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7." 11 U.S.C. § 1129(a)(7)(A)(ii) (1988). We find no such conflict. Because the interest is provided for in the terms of the land contract and is therefore entitled to administrative priority status, Four Seasons would receive that interest in a Chapter 7 liquidation before anything would be distributed to the creditors. *See* 11 U.S.C. § 726(a) (1988). Thus treating the interest under the contract as an administrative expense does not give unsecured creditors less than they would receive in a Chapter 7 liquidation.

■ As has previously been recognized, "the price for securing the potential margin of benefit through assumption of an executory contract may be high. Indeed, the cost of assumption is nothing short of complete mutuality and requires performance in full just as if bankruptcy had not intervened." *Multech,* 47 B.R. at 752 (citing 2 *Collier on Bankruptcy* ¶ 365.01, at 365–11 (15th ed. 1984)). Although our allowance of the entire contract claim, including interest, as an administrative expense of Frontier's estate diminishes the dividend to unsecured creditors, that is only fair since the assumption was undertaken for their benefit. When a trustee proves wrong in his gamble that the benefits of an assumed executory contract will outweigh the burdens, the Code requires that the unsecured creditors, not the contracting party, bear the risk and suffer the loss. *Id.* at 751; *Norwegian Health Spa,* 79 B.R. at 509–10. Requiring court approval prior to assumption is a sufficient safeguard to protect the unsecured creditors. *Multech,* 47 B.R. at 752.

■ The Utah state court awarded damages to Four Seasons in the amount of

---

**3.** This general rule is not without exceptions. For example, we have held that interest accruing on taxes due after the filing of a bankruptcy petition is to be treated as an administrative expense of the bankruptcy estate, and consequently afforded first priority. *In re Mark Anthony Constr., Inc.,* 886 F.2d 1101, 1106 (9th Cir.1989).

$296,201.70 (of which $51,069.25 represented interest to March 27, 1984), plus attorneys' fees and costs. The court also awarded interest on the total judgment at the rate of 12% per annum, as permitted by Utah law. We conclude that the entire judgment of $296,201.70, plus attorneys' fees and costs, constitutes an administrative expense entitled to priority treatment.

In his reply brief to this court, the trustee attempts for the first time to draw a distinction between the treatment required for the $51,069.25 in interest awarded by the Utah court and the annual 12% interest that has accrued since the state court judgment in 1985. He alleges that because he "never assumed the state court judgment," the post-judgment interest is not part of the contract damages and must be given fifth priority under § 726(a)(5).

As a rule, appellants cannot raise a new issue for the first time in their reply brief, *United States v. Birtle*, 792 F.2d 846, 848 (9th Cir.1986), and we may choose to disregard this argument. We believe, however, that the trustee mischaracterizes the nature of the state court's interest award. The contract between Frontier and Four Seasons required the payment of interest until Frontier paid the contract price in full. When the state court liquidated the amount owed by the trustee into a sum certain, it could only calculate how much interest had accrued up to the time of its decision. Because the court did not know how long Frontier would take to pay, it liquidated the remainder into post-judgment interest at 12% per annum.

As we have previously stated, the payment of interest was an integral component of the contract. When the trustee assumed the contract, he assumed the obligation of paying interest on the unpaid balance, and this obligation encompasses the post-judgment interest awarded by the state court. We therefore find no basis for treating the post-judgment interest differently from that which had accrued prior to the state court's judgment, and hold that the post-judgment interest constitutes an administrative expense of Frontier's estate.

## CONCLUSION

This appeal involves the trustee's continuing attempt to escape the consequences of an unfortunate business decision he made over 10 years ago. As the bankruptcy court found in concluding that the trustee had assumed the contract,

> The long and short of it is that the trustee was offered an opportunity to [sic] a period of six months to try to market the property and cure the defaults, not at the time of acceptance, but from the proceeds of any sale. The trustee could not market the property. He gambled, and lost.

We affirm the bankruptcy court's determination that the contract was executory and validly assumed by the trustee. We conclude that the interest awarded by the Utah state court is not "interest ... on [the] claim" under § 726(a)(5); rather, it is part of the claim because it is part of the damages flowing from a breach of the contract. We therefore affirm the district court's holding that the interest awarded in the state court proceeding is entitled to priority treatment as an administrative expense.

Costs of appeal are awarded to the appellees.

AFFIRMED IN PART & REVERSED IN PART.

NOONAN, Circuit Judge, concurring:

I concur in the judgment of the court but do not reach two issues the court addresses. I rely, rather, on the trustee's waivers.

The trustee by his conduct waived the question whether the contract was executory by treating the contract as executory. He stipulated in open court and later in writing that he wanted to assume the contract and sought the court's permission to do so. He later delivered to Four Seasons his written notice of assumption and for years thereafter acted as though the contract were executory. In his complaint filed in the Bankruptcy Court for the Southern District of California on December 17, 1987 (of which we may take judicial notice) the trustee states categorically, "On

January 22, 1982, the trustee assumed the Contract." Whether we construe the trustee's conduct as constituting a waiver or hold that it created an estoppel since Four Seasons relied upon it, *In re J.F. Hink & Son*, 815 F.2d 1314, 1318 (9th Cir.1987), the trustee is not free to raise the question in this court as to whether or not the contract was executory and assumed by him.

The trustee also waived the question of whether the interest on the state judgment is entitled to priority. We need not decide on this appeal whether as a matter of law such interest would have priority. Its priority in this case has been contested too late for the issue to be re-decided here.