Robert P. **MOSIER**, Appellant,

v.

**UNITED EDUCATION & SOFTWARE,** Defendant.

**No. CV 02–03961–GHK.**
**Bankruptcy No. LA 89–26724 EC.**

United States District Court,
C.D. California.

Oct. 8, 2002.

Edythe L. Bronston, Sherman Oaks, CA, for Appellant.

Peter A. Davidson, Rein Evans & Sestanovich LLP, Los Angeles, CA, for Appellee.

**APPEAL FROM AN ORDER OF THE UNITED STATES BANKRUPTCY COURT.**

KING, District Judge.

Appellant Robert P. Mosier appeals a bankruptcy court "Order Denying Motion to Exempt Robert P. Mosier, Former President and CEO of the Debtor, From the Proceeding to Disgorge Professional Fees." Laffer & Gottlieb ("L & G") has filed an opposition, in which Arnold L. Kupetz, the Chapter 7 Trustee, joins in part. This appeal is appropriate for resolution without oral argument. After considering all pertinent papers and the entire record, we rule as follows:

## I. Background

In December 1989, United Education & Software ("UES") sought Chapter 11 protection. In March 1994, UES hired Mosier as an interim Chief Executive Officer ("CEO") and eventually as President and CEO to oversee the divestiture of UES's various assets. Both before and during his tenure with UES, the bankruptcy court held hearings regarding Mosier's employment status and compensation. By the time UES's case was converted to a Chapter 7 in April 1996, ending Mosier's employment, UES had paid him approximately $302,500.00, including approximately $23,200.00 for expenses.

In November 2001, Mosier received a notice from the Chapter 7 Trustee regarding the possible disgorgement of a portion of the $302,500.00. The bankruptcy court had noted discrepancies in the fees recovered by professionals who provided services to UES during the Chapter 11 proceedings and ordered the Trustee to obtain further information. The Trustee discovered that several professionals had only received a small percentage of their total fees, while others were more fully compensated. The bankruptcy court indicated a desire to equalize the compensation received by professionals on a pro rata basis. According to the Trustee's calculations, Mosier could potentially be required to disgorge as much as $158,791.60.

On January 15, 2001, Mosier filed a motion seeking exemption from the class of professionals who would be required to participate in future disgorgement proceedings. Among other things, he contended that previous bankruptcy court judges had treated him as an employee of UES, rather than a professional, and thus that he was not subject to disgorgement. After two hearings and supplemental briefing, the bankruptcy court denied Mosier's motion, concluding that he was a professional and that he would have to respond to an order to show cause re: disgorgement, to be issued at an unspecified date. On May 9, 2002, Mosier filed the instant appeal.

## II. Analysis

■ As a court of appeal, we have an independent duty to determine whether jurisdiction exists before addressing the merits.[1] *See, e.g., Lievsay v. W. Fin. Sav. Bank (In re Lievsay)*, 118 F.3d 661, 662 (9th Cir.1997) (quoting *Stanley v. Crossland, Crossland, Chambers, MacArthur & Lastreto (In re Lakeshore Village Resort, Ltd.)*, 81 F.3d 103, 105 (9th Cir.1996)); *Waddill v. Meador (In re Advantage Communications Group, Inc.)*, 1997 WL 414169, at *1, 1997 U.S. Dist. LEXIS 10416, at *4 (N.D.Cal. July 14, 1997).

### A. *Timeliness*

■ Parties generally have ten days to file a notice of appeal. Fed. R. Bankr.P. 8001–02. The ten-day period is jurisdictional and strictly construed. *See Preblich v. Battley*, 181 F.3d 1048, 1056 (9th Cir. 1999) (citing *In re Souza*, 795 F.2d 855, 857 (9th Cir.1986)). Here, Mosier filed his notice of appeal within ten days of the filing and entry of the bankruptcy court's order.

### B. *Finality*

Mosier filed this appeal pursuant to 28 U.S.C. § 158. Section 158 authorizes appeals from "final judgments, orders, and

---

**1.** Mosier contends that L & G lacks standing and that we cannot consider its brief. Our duty to ascertain jurisdiction does not depend on L & G's standing to oppose Mosier's appeal. In any event, the Chapter 7 Trustee possesses standing and joined in L & G's opposition on the question of jurisdiction.

decrees; from interlocutory orders and decrees issued under section 1121(d) of title 11 ...; [or] with leave of the [bankruptcy] court, from other interlocutory orders and decrees ...." In this case, the bankruptcy court did not issue an order pursuant to 11 U.S.C. § 1121(d), nor did it authorize an interlocutory appeal. Therefore, our jurisdiction turns on the finality of the bankruptcy court's order. *See, e.g., Schulman v. Cal. (In re Lazar)*, 237 F.3d 967, 985 (9th Cir.2001); *Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.)*, 177 F.3d 774, 779 (9th Cir.1999); *Preblich v. Battley*, 181 F.3d 1048, 1055 (9th Cir. 1999).

■ Traditionally, final decisions "end[ ] the litigation on the merits and leave[ ] nothing for the court to do but execute the judgment." *See, e.g., Alexander v. Compton (In re Bonham)*, 229 F.3d 750, 761 (9th Cir.2000) (quoting *Elliott v. Four Seasons Props. (In re Frontier Props.)*, 979 F.2d 1358, 1362 (9th Cir.1992)). In bankruptcy cases, we take a pragmatic approach to finality because certain bankruptcy proceedings "are so distinctive and conclusive either to the rights of individual parties or the ultimate outcome of the case that final decisions as to them should be appealable as of right." *Alexander*, 229 F.3d at 761; *see also Schulman*, 237 F.3d at 985. We often emphasize "the need for immediate review, rather than whether the order is technically interlocutory ...." *Preblich*, 181 F.3d at 1055. Our concern is that irreparable harm will occur while losing parties wait what often takes years for bankruptcy proceedings to conclude. *Elliott*, 979 F.2d at 1363–64.

■ Despite our more flexible pragmatism, "traditional finality concerns ... dictate that we avoid having a case make two complete trips through the appellate process." *See, e.g., Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis)*, 113 F.3d 1040, 1043 (9th Cir.1997) (internal quotations omitted). We must "prevent piecemeal litigation, conserve judicial energy, and eliminate delays caused by interlocutory appeals." *Elliott*, 979 F.2d at 1362. A bankruptcy court order is thus only final if it "1) resolves and seriously affects substantive rights and 2) finally determines the discrete issue to which it is addressed." *Schulman*, 237 F.3d at 985 (internal quotations omitted) (quoting *Law Offices of Nicholas A. Franke*, 113 F.3d at 1043).

■ Orders requiring disgorgement resolve and seriously affect substantive rights. *See Law Offices of Nicholas A. Franke*, 113 F.3d at 1043–44 (noting that the bankruptcy court did not indicate any possibility that the disgorged funds would be returned). However, an order that determines liability, but not damages, generally does not seriously affect substantive rights because the parties "must engage in protracted litigation before the ... order will have any direct impact in the case." *Elliott*, 979 F.2d at 1362–63; *see also New Life Health Cent. Co. v. IRS (In re New Life Health Cent. Co.)*, 102 F.3d 428, 428 (9th Cir.1996) (concluding order was interlocutory in part because order did not require payment of "claim in full or part."). Similarly, denials of motions to dismiss do not seriously affect substantive rights. *See New Life Health Cent. Co.*, 102 F.3d at 428. Such denials do not determine liability, so much as allow the proceedings against the losing party to continue. *See id.*

■ An order does not conclusively resolve an issue if later pending proceedings could effectively reverse the order appealed. *See, e.g., Schulman v. Cal. (In re Lazar)*, 237 F.3d 967, 985 (9th Cir.2001). For example, a bankruptcy court's order classifying monies as taxes was not final

for purposes of determining the priority of payments when a pending claim would have restored the original priority arrangement, regardless of whether the fees were characterized as taxes. *See id.* at 985–86. The bankruptcy court's order may have settled the characterization of the monies as taxes, but it did not resolve the question of priority, and thus was not final. *Id.* at 986.

■ Here, the order denying Mosier's motion did not resolve and seriously affect substantive rights. The bankruptcy court did not order Mosier to disgorge fees. It merely concluded that Mosier is a professional, who must respond to an order to show cause re: disgorgement if and when the bankruptcy court issues one. The order did not resolve the issue of liability, let alone the amount of any such liability.

In effect, Mosier seeks review of an order denying a motion to dismiss, which we generally do not treat as final. *See New Life Health Cent. Co.,* 102 F.3d at 428. He argues that hearing this appeal now would conserve judicial resources. This of course assumes that the bankruptcy court improperly denied his motion. Moreover, every party appealing the denial of a potentially dispositive motion could raise this argument. Admittedly, all proceedings following an improper denial of a dispositive motion "waste" judicial resources, but we are not in a position to pick and choose appeals solely on this basis.

Furthermore, the order does not appear to conclusively resolve the issue of disgorgement. As Mosier notes, the bankruptcy court has not considered arguments about the reasonableness of the amounts paid to him by UES and/or the benefits he conferred upon UES. Later proceedings on these issues could affect the bankruptcy court's decision to require disgorgement.

Nevertheless, Mosier contends the order is final because his status as a professional is analogous to the "the question of whether [a party] still holds a claim at all[, which] 'is clearly potentially dispositive' for there is no need to determine the amount of [a] claim without a finding that [the party] still holds a claim." *Prestige Ltd. P'ship–Concord v. E. Bay Car Wash Partners (In re Prestige Ltd. P'ship–Concord),* 234 F.3d 1108, 1114 (9th Cir.2000) (internal alterations added). However, *Prestige* is distinguishable because in that case the bankruptcy and district courts determined that a claim existed, even if they did not determine the amount of the claim. Here, Mosier's liability remains unresolved, as it depends upon the outcome of an as-yet-unissued order to show cause.

Additionally, the policy reasons behind the "pragmatic approach" to finality do not apply. Immediate resolution of Mosier's classification as a professional is not necessary to prevent irreparable injury. The record on appeal contains no evidence that any of Mosier's rights or interests will be prejudiced by resolution of this matter after the bankruptcy court issues an order to show cause and concludes that Mosier is in fact liable to disgorge funds.

Instead, this appeal poses the dangers of piecemeal litigation, wasted judicial resources, and unnecessary delays. We could affirm the bankruptcy court's conclusion with respect to Mosier's status, only to determine in a second appeal that other reasons preclude disgorgement. Alternatively, the bankruptcy court may decide not to issue an order to show cause re: disgorgement and/or conclude that good cause exists to excuse Mosier from the disgorgement proceedings despite his professional status. If so, this entire appeal could have been avoided.

Consequently, the bankruptcy court's order is not final because it did not (1)

resolve and seriously affect substantive rights or (2) finally and conclusively determine the issue of disgorgement.[2]

### III. Disposition

Accordingly, Mosier's appeal is **DISMISSED** for lack of jurisdiction.

IT IS SO ORDERED.

---

**2.** To the extent that we can construe Mosier's timely notice of appeal as a motion for leave to appeal, *see* Fed. R. Bankr.P. 8003(c); *Kashani v. Fulton (In re Kashani),* 190 B.R. 875, 882 (9th Cir. BAP 1995), we deny any such motion. Resolution of this appeal will not necessarily resolve the issue of disgorgement, nor is it time-sensitive such that immediate resolution is necessary to avoid prejudice to Mosier. *See Kashani,* 190 B.R. at 882.