In re: Gary LAZAR; Divine Grace Lazar; California Target Enterprises, Inc.; Alameda Management Company, Inc.; Liberty Marketing Company, Inc.; P & M Service Stations, Inc.; Pronto Marketing Company, Inc.; Mission Marketing Group, Inc.; Good Guys Lube 'N Tune, Inc.; Challenge Marketing Co., Inc.; California Target Supply, Inc. Debtor.

George E. Schulman, Chapter 7 Trustee, Appellant–Cross–Appellee,

v.

State of California; California State Water Resources Control Board; California Underground Storage Tank Cleanup Fund; John P. Caffre; James M. Stuchater; Mark Del Peiro; Mary Jane Forster; John W. Brown, Appellees–Cross–Appellants.

Nos. 97–56635, 97–56636 and 97–56638.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 8, 1999.

Filed Jan. 12, 2001

Elmer Dean Martin, III, Diamond Bar, California, for the appellants-cross-appellees.

David Gould, McDermott, Will & Emery, Los Angeles, California, for the appellants-cross-appellees.

Donald Robinson, Deputy Attorney General, Los Angeles, California, for the appellees-cross-appellants.

William S. Abbey, Deputy Attorney General, Los Angeles, California, for the appellees-cross-appellants.

Mark Browning, Assistant Attorney General, Bankruptcy & Collections Division, Austin, TX, for amici curiae states.

John R. Ellis, Senior Assistant Attorney General, Seattle, Washington, for amici curiae states.

Before: BROWNING, THOMAS, and WARDLAW, Circuit Judges.

WARDLAW, Circuit Judge:

In these consolidated bankruptcy appeals, the California State Water Resources Control Board (the "State Board") and the California Underground Storage Tank Cleanup Fund (the "Fund") challenge the district court's orders denying them Eleventh Amendment immunity. In particular, the State Board contends that it is an arm of the state of California, that it did not waive its Eleventh Amendment immunity, and that 11 U.S.C. § 106 does not validly abrogate such immunity. The Fund raises a narrower Eleventh Amendment question, arguing merely that it is an "arm of the state." The State Board also appeals the district court's order ruling that abstention is not appropriate, under 28 U.S.C. § 1334(c), and, on cross-appeal, George E. Schulman, the bankruptcy trustee, (the "Trustee") seeks reversal of the district court's order finding that fees payable to the Fund are "taxes" for bankruptcy purposes, under 11 U.S.C. § 507(a)(8). We affirm in part, reverse in part, dismiss in part, and remand for further proceedings.

More precisely, we hold that while the State Board is an arm of the State of California, it has waived its Eleventh Amendment immunity in the Trustee's mandamus action. In the Fund's appeal, we apply our five-factor test and hold that the Fund is an "arm of the state" and therefore entitled to invoke Eleventh Amendment immunity. Finally, we dismiss the State Board's abstention appeal and the Trustee's cross-appeal for lack of jurisdiction.

## I. BACKGROUND

On July 27, 1992, upon the seizure by the State of California of the bank ac-

counts held by Divine Grace Lazar and Gary Lazar (the "debtors" or the "Lazars") for nonpayment of gasoline taxes, including payments imposed for contribution to the Fund, the Lazars voluntarily petitioned for Chapter 11 reorganization on behalf of themselves and eight of their corporate entities.[1] The corporate cases were substantively consolidated and ordered jointly administered with the Lazars' personal bankruptcy proceedings. George Schulman was appointed as Chapter 11 trustee and, on September 14, 1994, when the cases were converted to Chapter 7, was appointed as trustee of the Chapter 7 estate.

The Lazars and their entities owned, operated and leased some 200 retail gasoline stations throughout Southern California in the 1980s and early 1990s. In May 1992, the Los Angeles County Grand Jury returned an indictment against the Lazars, their corporate entities, and certain other individuals for environmental crimes resulting from their operation of the gas stations, including illegal disposal of hazardous wastes and falsification of tank test results related to leaking gas tanks at the Lazars' mostly older gas stations. In September 1994, the Lazars pleaded *nolo contendere* to the charges of conspiracy and falsification of the underground storage tank test results, and, on February 22, 1995, the state court sentenced the Lazars to eight years in custody and fined their companies more than $400 million.

The state criminal charges arose from violations of the Barry Keane Underground Storage Cleanup Trust Fund Act (the "Act"), enacted by the California legislature in 1989 to address the problem of leaking petroleum underground storage tanks and the threat they pose to public health and safety and the environment. *See* Cal. Health & Safety Code § 25299.10 (West 1999 & Supp.2000). The Act imposes duties on owners or operators of under-

---

**1.** A ninth corporate case was filed approximately one year before the others, and was substantively consolidated with them.

ground storage tanks, including the duty to investigate the condition of the tanks, to clean up leaks, and to establish evidence of financial responsibility for taking corrective action and compensating others for damage caused by the leaks. The Act established the Fund, a reimbursement program administered by the State Board that is used by small gasoline purveyors to comply with the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 *et seq.* (1994), which requires these small gasoline purveyors to demonstrate financial ability to pay clean-up claims for damages caused by their leaking underground storage tanks.

The Fund is financed by a "fee" imposed on underground storage tank owners for each gallon of gasoline or other petroleum product stored in a permitted tank. Owners and operators of petroleum underground storage tanks may file a claim against the Fund to recover costs associated with corrective action taken in response to unauthorized releases. Cal. Health & Safety Code § 25299.54 (West 1999 & Supp.2000). Before filing for bankruptcy on July 27, 1992, California Target Enterprises, one of the Lazar companies, submitted twenty claims against the Fund to the State Board. The Trustee became the holder of the twenty claims as a result of his appointment as trustee of the bankruptcy estate.

In November 1993, the Controller of the State of California (the "Controller") submitted proofs of claims for unpaid taxes against California Target Enterprises totaling in excess of $31 million in the bankruptcy proceedings. The California State Board of Equalization (the "BOE") submitted at least five proofs of claims for unpaid taxes totaling in excess of $13 million in the bankruptcy proceedings during the years 1993 through 1995. An unspecified portion of this over $44 million in claims is for taxes payable to the Fund.

The twenty reimbursement claims were denied on November 3, 1994, by David Deaner, a member of the State Board's staff and the Manager of the Fund ("Final Staff Decision"). The November 3 letter cited misconduct by the Lazars as the basis for denial. The Trustee filed an appeal of the Final Staff Decision, which was summarily denied by Harry Schueller, Chief of the State Board's Division of Clean Water Programs, in a letter dated March 9, 1995 ("Final Division Decision"). The Trustee then filed an Amended Petition for Board Review of Final Division Decision ("Amended Petition") and a Request for Hearing and Oral Argument ("Request for Hearing"). The Amended Petition and Request for Hearing were deemed denied by operation of law 270 days after the State Board received them. *See* Cal.Code Regs. tit. 23, § 2814.3(d) (2000).

Having exhausted his administrative remedies, the Trustee filed a Petition for Peremptory Writ of Administrative Mandamus or Other Appropriate Writ against the State Board in the Superior Court of the State of California for the County of Los Angeles on March 13, 1996 (the "Mandamus Adversary"). In the Mandamus Adversary, the Trustee sought "a writ requiring the [State] Board to reinstate the Trustee's claims against the [Fund], pay the claims in accordance with the statutory prioritization scheme, and thereby to permit the Trustee to use the [Fund] as a mechanism for demonstrating financial responsibility for operation of underground storage tanks in accordance [with] the provisions of state and federal law." The Trustee also sought "actual damages" in excess of $2.2 million, "reasonable attorneys fees," and "such other and further relief as appears appropriate under the circumstances." On March 22, 1996, the Trustee filed a Notice of Removal of the Mandamus Adversary to the United States Bankruptcy Court for the Central District of California, pursuant to 28 U.S.C. § 1452.[2] In response, the State Board filed a Motion for Remand or in the Alternative Abstention and Remand. The State

**2.** Under 28 U.S.C. § 1452(a), "[a] party may remove any claim or cause of action in a civil action ... to the district court for the district

Board argued that: (1) the bankruptcy court's subject matter jurisdiction over the action was foreclosed by the Eleventh Amendment; (2) the bankruptcy court lacked subject matter jurisdiction under 28 U.S.C. § 1452(a) because the action concerned enforcement by the State of California of its police or regulatory powers; and (3) under 28 U.S.C. § 1334(c)(2), the bankruptcy court must abstain from hearing the action and remand it to state court, or, in the alternative, the bankruptcy court should abstain and remand in the interests of justice, comity and respect for state law, under 28 U.S.C. § 1334(c)(1).

In an opinion dated September 3, 1996, the bankruptcy court rejected each of the State Board's arguments and denied the motion. *See Schulman v. California State Water Resources Control Bd. (In re Lazar)*, 200 B.R. 358 (Bankr.C.D.Cal.1996). It found that the Mandamus Adversary was not a civil action by a governmental unit to enforce that unit's police or regulatory power and was therefore properly removed under 28 U.S.C. § 1452(a). It also concluded that the requirements for mandatory abstention were not met, principally because the Mandamus Adversary did not present a purely state law question, and because it is a core proceeding within the meaning of 28 U.S.C. § 1334(c)(2). The bankruptcy court rejected the State Board's permissive abstention arguments, finding that the fac-

tors set forth in *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1167 (9th Cir.1990), weighed against abstention. For similar reasons, the court found that remand was not warranted by any equitable consideration. Leaving the constitutional issues for last, the bankruptcy court, while suggesting but not holding that a state's waiver of sovereign immunity under 11 U.S.C. § 106(b) was invalid after *Seminole Tribe v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), ruled that the State of California waived its sovereign immunity by filing its proofs of claims in the bankruptcy proceeding and "by making a general appearance in support of its position as one of the most substantial secured creditors in case." *Schulman*, 200 B.R. at 377. The State Board timely appealed to the Bankruptcy Appellate Panel.

Meanwhile, on June 14, 1996, the Trustee had filed "a complaint to determine and subordinate the [BOE's] postpetition claim[s]," to "recover damages for unlawful misconduct of agencies of the State of California[,] and to recover payments improperly paid" against the State of California, the State Board, and the Fund (the "Tax Adversary").[3] In this action, the Trustee moved for partial summary judgment for determination of two discrete issues: (1) whether the Fund is an arm of the state capable of invoking immunity under the Eleventh Amendment;[4] and (2)

where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a) (1994). Under 28 U.S.C. § 1334(a) and (b), the district courts "have original and exclusive jurisdiction of all cases under title 11" and "have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." *Id.* § 1334(a), (b). In other words, "[t]hose matters falling under the heading of concurrent jurisdiction (i.e., civil actions involving claims that arise under or in or are related to Title 11 proceedings) may be filed originally in state court, then subsequently removed by one of the parties to federal district court." *Maitland v. Mitchell (In re Harris Pine Mills)*, 44 F.3d 1431, 1435 (9th Cir.1995); *see also* 16

James Wm. Moore et al., *Moore's Federal Practice* § 107.15[8][b], at 107–131 (3d ed.2000) (noting that "unlike the general removal statute, which authorizes only defendants to remove, the bankruptcy removal statute authorizes *any* party to remove").

3. Also named as defendants to the Tax Adversary were the California State Board of Equalization, the California Franchise Tax Board, eleven individuals in their official capacities as members of agencies of the State of California and one person in his individual capacity.

4. Because the Fund was not a party to the Mandamus Adversary, it was not covered by the bankruptcy court's prior ruling that the state had waived its immunity.

whether the monies paid into the Fund are properly characterized as "fees" and not "taxes." The bankruptcy court denied the motion in a Order dated June 6, 1997, ruling that the Fund is an entity of the State of California for the purpose of claiming sovereign immunity under the Eleventh Amendment and that the fees imposed as payment to the Fund are taxes for the purposes of 11 U.S.C. § 507(a)(8).[5] The Trustee timely appealed to the United States District Court for the Central District of California, and successfully moved to consolidate the Mandamus and Tax Adversaries.

The district court affirmed the bankruptcy court's order denying the State Board's Motion for Remand or Abstention, but reversed in part and affirmed in part the bankruptcy court's order denying the Trustee's Motion for Partial Summary Judgment. The district court held that: (1) the fees paid into the Fund are taxes for purposes of 11 U.S.C. § 507(a)(8), notwithstanding any contrary characterization by California state law; (2) the Fund is not an arm of the state capable of invoking the Eleventh Amendment;[6] and (3) the bankruptcy court correctly decided against abstention in the Mandamus Adversary. The parties' cross-appeals of this decision are before us.

## II. MANDAMUS ADVERSARY

### A. Eleventh Amendment Immunity

We must first address whether the State Board enjoys Eleventh Amendment immunity in the Mandamus Adversary.

■ We have jurisdiction to review the district court's denial of the State Board's claim of Eleventh Amendment immunity under the collateral order doctrine. *Puerto Rico Aqueduct & Sewer Auth. v.*

*Metcalf & Eddy, Inc.* 506 U.S. 139, 147, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993). We review questions of Eleventh Amendment immunity de novo. *Hill v. Blind Indus. & Servs.,* 179 F.3d 754, 756 (9th Cir.1999), *amended by* 201 F.3d 1186 (9th Cir.2000). "Under the law of this circuit, an entity invoking Eleventh Amendment immunity bears the burden of asserting and proving those matters necessary to establish its defense." *Id.* at 1186.

■ The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. "Although the text of the Amendment would appear to restrict only the Article III diversity jurisdiction of the federal courts," *Seminole Tribe v. Florida,* 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the Eleventh Amendment "stand[s] not so much for what it says, but for the presupposition ... which it confirms." *Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 120 S.Ct. 631, 640, 145 L.Ed.2d 522 (2000) (quoting *Seminole Tribe,* 517 U.S. at 54, 116 S.Ct. 1114 (quoting *Blatchford v. Native Village of Noatak,* 501 U.S. 775, 779, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991))) (internal quotation marks omitted). "That presupposition ... has two parts: first, that each State is a sovereign entity in our federal system; and second, that ' "it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent." ' " *Seminole Tribe,* 517 U.S. at 54, 116 S.Ct. 1114 (quoting *Hans v. Louisi-*

---

5. 11 U.S.C. § 507(a) "sets forth nine categories of claims that are entitled to priority in bankruptcy cases." 4 Collier on Bankruptcy ¶ 507.01, at 507–9 (15th ed. rev.2000). Under 11 U.S.C § 507(a)(8), "[a]n eighth priority is granted ... to allowed unsecured claims of a governmental unit for certain kinds of prepetition taxes." *Id.* ¶ 507.10[1], at 507–54.

6. Once it held that the Fund, which it determined would be the source of any money damages, was not an "arm of the state," the district court found that the State Board's Eleventh Amendment immunity claim was moot.

*ana,* 134 U.S. 1, 13, 10 S.Ct. 504, 33 L.Ed. 842 (1890) (quoting *The Federalist* No. 81, at 487 (Alexander Hamilton) (Clinton Rossiter ed., 1961))). Indeed, as the Supreme Court has recently explained, "the sovereign immunity of the States neither derives from nor is limited by the terms of the Eleventh Amendment." *Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 2246, 144 L.Ed.2d 636 (1999). Rather, "sovereign immunity derives ... from the structure of the original Constitution itself." *Id.* at 2254.[7] Although some may wish to factually dispute whether "a longstanding tradition [exists] in the bankruptcy courts, dating back to 1979, of allowing the bankruptcy courts to enforce applicable law against the states," *see Schulman v. California State Water Res. Control Bd. (In re Lazar),* 200 B.R. 358, 376 (Bankr.C.D.Cal. 1996), the Supreme Court in *Seminole Tribe* interpreted the Eleventh Amendment to apply in bankruptcy proceedings.[8] As the Court stated, "[t]he Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction." *Seminole Tribe,* 517 U.S. at 72–73, 116 S.Ct. 1114.

The district court held that Eleventh Amendment immunity did not apply in the Mandamus Adversary because the Fund, which it determined would be the source of any money damages, was not an "arm of the state." The State Board is the only named defendant in the Mandamus Adversary, however, and "with respect to the ... Eleventh Amendment question, it is the entity's potential legal liability, rather than its ability or inability to require a third party to reimburse it, or to discharge the liability in the first instance, that is relevant." *Regents of Univ. of Cal. v. Doe,* 519 U.S. 425, 431, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997). Therefore, to determine whether Eleventh Amendment immunity applies here, we must assess the nature of the State Board, a task made easy by the California legislature.

The California Water Code provides that the State Board "shall exercise the adjudicatory and regulatory functions of the state in the field of water resources," Cal. Water Code § 174 (West 1971), and that the State Board "is in the California Environmental Protection Agency" and "consist[s] of five members appointed by the Governor," *id.* § 175. Thus, the State Board correctly contends that it is an agency of the State of California, and the Trustee does not dispute this contention. *See Rounds v. Oregon State Bd. of Educ.,* 166 F.3d 1032, 1035 (9th Cir.1999) ("To determine whether [an entity] enjoys Eleventh Amendment immunity, we must look to its nature as created by state law.") (citing *Regents of Univ. of Cal. v. Doe,* 519 U.S. at 429–30 & n. 5); *cf. Dittman v. California,* 191 F.3d 1020, 1026 (9th Cir. 1999) (holding that the State of California Acupuncture Committee is a state agency entitled to Eleventh Amendment immunity), *cert. denied,* —— U.S. ——, 120 S.Ct. 2717, 147 L.Ed.2d 982 (2000). "[U]nder the eleventh amendment, agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court." *Id.* at 1025 (quoting *Mitchell v. Los Angeles Community College Dist.,* 861 F.2d 198, 201 (9th

---

**7.** In accordance with its historical, structural view of state sovereign immunity, the Supreme Court has stated that the phrase "Eleventh Amendment immunity" "is convenient shorthand but something of a misnomer." *Alden,* 119 S.Ct. at 2246. Like the Supreme Court, *see Kimel,* 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522, we will continue to use this "convenient shorthand."

**8.** Justice Rehnquist, in responding to Justice Stevens's concern with the majority decision's possible impact in bankruptcy cases, wrote "contrary to the implication of Justice Steven's [dissent], it has not been widely thought that ... bankruptcy ... statutes abrogated the States' sovereign immunity.... Although the ... bankruptcy laws have existed practically since our Nation's inception, ... there is no established tradition in the lower federal courts of allowing enforcement of those statutes against the States." *Seminole Tribe,* 517 U.S. at 73, n. 16, 116 S.Ct. 1114.

Cir.1988)) (internal quotation marks omitted); *see also Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.").

▮ The State Board's Eleventh Amendment immunity is not absolute, however. "[A] State may waive its sovereign immunity by consenting to suit." *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 119 S.Ct. 2219, 2223, 144 L.Ed.2d 605 (1999) (citing *Clark v. Barnard,* 108 U.S. 436, 447–48, 2 S.Ct. 878, 27 L.Ed. 780 (1883)). Furthermore, "Congress may authorize such a suit in the exercise of its power to enforce the Fourteenth Amendment—an Amendment specifically designed to alter the federal-state balance." *Id.* (citing *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976)). The Trustee argues that both of these circumstances are present in the Mandamus Adversary. Therefore, to determine whether the State Board enjoys Eleventh Amendment immunity, we must determine whether it waived that immunity or whether Congress abrogated that immunity in a valid exercise of its constitutional powers.[9]

### 1. Waiver

▮ "[A] State's sovereign immunity is 'a personal privilege which it may waive at pleasure.'" *Id.* at 2226 (quoting *Clark,* 108 U.S. at 447, 2 S.Ct. 878). "Generally, we will find a waiver either if the State voluntarily invokes our jurisdiction or else if the State makes a 'clear declaration' that it intends to submit itself to our jurisdiction." *Id.* (citations omitted).

The Trustee argues that the State Board waived its Eleventh Amendment immunity in the Mandamus Adversary because other agencies of the State of California, namely the BOE and the Controller, filed proofs of claims in the Lazars' bankruptcy proceedings.

In *Gardner v. New Jersey,* 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947), the Supreme Court addressed the impact that filing a proof of claim in a bankruptcy proceeding has on a state's assertion of Eleventh Amendment immunity. *Id.* at 573–74, 67 S.Ct. 467. The Court held:

> It is traditional bankruptcy law that he who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure. If the claimant is a State, the procedure of proof and allowance is not transmitted into a suit against the State because the court entertains objections to the claim. The State is seeking something from the debtor. No judgment is sought against the State.... When the State becomes the actor and files a claim against the fund it waives any immunity which it otherwise might have had respecting the adjudication of the claim.

*Id.* Last Term, the Supreme Court reaffirmed the validity of *Gardner. See College Sav. Bank,* 119 S.Ct. at 2228 n. 3 (stating that *Gardner* "stands for the unremarkable proposition that a State waives its sovereign immunity by voluntarily invoking the jurisdiction of the federal courts"); *see also California Franchise Tax Bd. v. Jackson (In re Jackson),* 184 F.3d 1046, 1048–50 & n. 1 (9th Cir.1999) (relying on *Gardner* to find that the California Franchise Tax Board "waived its sovereign immunity when it filed a proof of claim for unpaid state income taxes against the Jacksons").

The question in this case, then, is not whether a state waives its Eleventh Amendment immunity by filing a proof of claim in bankruptcy. *Gardner* establishes that it does. *Gardner,* 329 U.S. at 573–74,

---

**9.** Because the Trustee filed the Mandamus Adversary only against the State Board, and not against the appropriate officers of the State Board, the *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), exception to Eleventh Amendment immunity is, despite the Trustee's contentions to the contrary, inapposite.

67 S.Ct. 467. Rather, the relevant questions are the extent of this waiver and, more concretely, how this waiver applies to the State Board in the Mandamus Adversary. We now turn to these questions.

### a. The Rule of *Gardner*

As the Fifth Circuit has recognized, "[t]he extent to which filing a proof of claim constitutes waiver of [Eleventh Amendment] immunity is uncertain." *Texas ex rel. Board of Regents of the Univ. of Tex. Sys. v. Walker,* 142 F.3d 813, 820 (5th Cir.1998), *cert. denied,* 525 U.S. 1102, 119 S.Ct. 865, 142 L.Ed.2d 768 (1999).

> Surely, as held in the *Gardner* decision, it encompasses defenses to the claim asserted. But does it extend to the assertion of a counterclaim, and if so, must the counterclaim arise out of the same transaction or occurrence as the state's claim? If any counterclaim is permitted on this theory, is recovery limited to an offset of some or all of the state's recoverable claim, or is an affirmative recovery permitted?

Richard H. Fallon et al., *Hart and Wechsler's The Federal Courts and the Federal System* 111–12 (4th ed. Supp.1999) [hereinafter Hart & Wechsler (Supp.1999)]. Although we have never directly addressed these questions, we have applied *Gardner* in the past, and these past applications provide us with some guidance.

First, in *Confederated Tribes v. White (In re White),* 139 F.3d 1268 (9th Cir. 1998), we held, in accordance with *Gardner,* that by participating in a bankruptcy proceeding, an Indian tribal government "waived sovereign immunity respecting the adjudication of its claim against [the debtor]'s assets." *Id.* at 1270. In so holding, we upheld the district court's order affirming discharge of the tribal government's claim under Chapter 7 of the Bankruptcy Code. *See id.* at 1268. Similarly, in *California Franchise Tax Board v. Jackson (In re Jackson),* 184 F.3d 1046 (9th Cir. 1999), we determined that because a state agency filed a proof of claim, it was not immune from the bankruptcy court's discharge of that claim. *Id.* at 1048–50. These two decisions clarified the rule of *Gardner:* that when a state files a proof of claim against a debtor, it waives its Eleventh Amendment immunity with respect to the adjudication of that particular claim. Or, as the *Gardner* Court stated, by filing a proof of claim in bankruptcy, the state waives its immunity from "[t]he whole process of proof, allowance, and distribution" of the claim. *Gardner,* 329 U.S. at 574, 67 S.Ct. 467.

In *Jackson,* however, we indicated that this waiver may encompass more than the mere adjudication of the state's claim. We noted favorably the Fourth Circuit's holding that "when a state files a proof of claim in a bankruptcy proceeding, the state waives its sovereign immunity in regard to the debtor's claims which arise out of the same transaction or occurrence as the state's proof of claim." *Jackson,* 184 F.3d at 1049 (citing *Schlossberg v. Maryland (In re Creative Goldsmiths, Inc.),* 119 F.3d 1140, 1148 (4th Cir.1997)). This language in *Jackson* is not inconsistent with *Gardner.* Although the waiver found constitutional in *Gardner* was limited to the state's own claim, and thus narrower than the same-transaction-or-occurrence standard, *Gardner,* 329 U.S. at 573–74, 67 S.Ct. 467; *see also Confederated Tribes,* 139 F.3d at 1271 ("The Supreme Court made clear in *Gardner v. New Jersey* that when a sovereign files a claim against a debtor in bankruptcy, the sovereign waives immunity with respect to the adjudication of the claim." (citation omitted)); *Seay v. Tennessee Student Assistance Corp. (In re Seay),* 244 B.R. 112, 118 (Bankr.E.D.Tenn.2000) (noting that "the operative language of *Gardner v. New Jersey* ... cannot really be read to say any more than that the filing of a proof of claim by a state waives its sovereign immunity as to matters connected with the claims allowance process"), nothing in *Gardner* precludes a broader waiver rule, *see* Hart & Wechsler (Supp. 1999), *supra,* at 111–12 (suggesting that when a state voluntarily invokes federal jurisdiction, the permissible extent of the state's Eleventh Amendment waiver goes

beyond the bounds of *Gardner*); Teresa K. Goebel, Comment, *Obtaining Jurisdiction over States in Bankruptcy Proceedings after Seminole Tribe*, 65 U. Chi. L.Rev. 911 (1998) ("The *Gardner* Court held that the defensive counterclaim rule was constitutional, but did not foreclose the possibility that a broader test may be constitutional."); *cf. Danning v. United States*, 259 F.2d 305, 309–11 (9th Cir.1958) (citing *Gardner* while allowing a bankruptcy trustee to assert counterclaims against the United States up to the amount of the federal government's claim).

Our sister circuits, in addressing this question, have not yet achieved consensus on the proper rule. As noted above, the Fourth Circuit has articulated a same-transaction-or-occurrence test. *Schlossberg*, 119 F.3d at 1148 (holding that "to the extent a defendant's assertions in a state-instituted federal action, including those made with regard to a state-filed proof of claim in a bankruptcy action, amount to a compulsory counterclaim, a state has waived any Eleventh Amendment immunity against that counterclaim in order to avail itself of the federal forum"). The Tenth Circuit also has held that sovereign immunity is waived for claims arising out of the same transaction or occurrence. *Wyoming Dep't of Transp. v. Straight (In re Straight)*, 143 F.3d 1387, 1390 (10th Cir.) (indicating, without reaching the question, that the permissible extent of a state's waiver may be even broader than the same-transaction-or-occurrence test),

*cert. denied,* 525 U.S. 982, 119 S.Ct. 446, 142 L.Ed.2d 400 (1998); *cf.* Fed.R.Civ.P. 13(c) (stating that a counterclaim "may claim relief exceeding in amount or different in kind from that sought in the pleading of the opposing party").[10] The Seventh Circuit, however, has indicated that when a state files a proof of claim in bankruptcy, the state's "waiver of immunity is limited to matters ... arising out of the same transaction or occurrence which is the subject matter of the suit, to the extent of defeating the [state]'s claim." *Jones v. Yorke (In re Friendship Med. Ctr., Ltd.)*, 710 F.2d 1297, 1301 (7th Cir. 1983); *Dekalb County Div. of Family & Children Servs. v. Platter (In re Platter)*, 140 F.3d 676, 679 (7th Cir.1998) (stating "that no sovereign immunity problem existed where the state filed the claim and no one sought money from the state").

▮ Consistent with this authority, we hold today that when a state or an "arm of the state" files a proof of claim in a bankruptcy proceeding, the state waives its Eleventh Amendment immunity with regard to the bankruptcy estate's claims that arise from the same transaction or occurrence as the state's claim. However, whether these claims are limited to only compulsory counterclaim/recoupment, as the Seventh Circuit holds, or allow for a broader affirmative recovery from the state, need not be addressed here. Because the estate's claims are slightly over $4 million and the BOE's proof of claim is at least $13 million[11] in taxes payable to

---

**10.** The Eighth and Eleventh Circuits, although addressing this issue, have not explicitly decided whether *Gardner* can be extended to include claims arising out of the same transaction or occurrence. *See Rose v. U.S. Dep't of Educ. (In re Rose)*, 187 F.3d 926, 930 (8th Cir.1999) (finding that a Missouri state agency's "submission of proofs of claims in Roses' bankruptcy case waived its immunity in related proceedings required to adjudicate the dischargeability of those claims"); *Georgia Dep't of Revenue v. Burke (In re Burke)*, 146 F.3d 1313, 1319 (11th Cir.1998) (holding that "by filing a proof of claim in the debtors' respective bankruptcy proceedings, the State waived its sovereign immunity for the purposes of the adjudication of those claims").

**11.** The Controller also filed proofs of claims in this case, totaling in excess of $31 million. Under California law, however, only the BOE has authority to file claims for underground-storage-tank (UST) fees. *See* Cal. Health & Safety Code § 25299.42 (West 1999); Cal. Rev. & Tax.Code §§ 50106, 50108 (West 1994). Therefore, because it is statutorily impossible for the Controller to have filed any authorized claims for UST fees, we find that the Controller's proofs of claims are not logically related to the Trustee's claims in the Mandamus Adversary for UST reimbursement and damages.

the Fund, affirmative recovery beyond the proof of claim amount is not being sought in this case, and we leave for a future day the question of whether *Gardner* would so permit. We must nevertheless ascertain whether the Trustee's Mandamus Adversary arises out of the same transaction or occurrence as the BOE's proof of claim.

#### b. Same Transaction or Occurrence

■ To determine whether the Trustee's claims against the State Board in the Mandamus Adversary arise out of the same transaction or occurrence as the proofs of claims filed in the Lazars' bankruptcy case by the BOE, "we apply the so-called 'logical relationship' test of Fed. R.Civ.P. 13(a)." *Pinkstaff v. United States (In re Pinkstaff)*, 974 F.2d 113, 115 (9th Cir.1992).

> A logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant.

*Id.; see also Moore v. New York Cotton Exch.*, 270 U.S. 593, 610, 46 S.Ct. 367, 70 L.Ed. 750 (1926) (" 'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship."); *Pochiro v. Prudential Ins. Co. of Am.,*, 827 F.2d 1246, 1252 (9th Cir.1987) (noting the same).

■ In these proceedings, the BOE filed several proofs of claims against the Lazars' bankruptcy estate, totaling approximately $13 million. An unspecified portion of the BOE's claims are for underground-storage-tank (UST) fees.[12] In the Mandamus Adversary, the Trustee has sued the State Board to reinstate its claims for reimbursement from the Fund and for damages. Accordingly, to determine whether the State Board is entitled to Eleventh Amendment immunity in the Mandamus Adversary, we must determine whether the BOE's claims for unpaid UST fees are logically related to the Trustee's claims for UST reimbursement.[13] *See Pinkstaff*, 974 F.2d at 115.

The State Board argues that although an owner or operator of an underground storage tank for which a permit is required must pay fees to the Fund in sums based on the amount of petroleum that is stored in the tanks, *see* Cal. Health & Safety Code § 25299.41 (West 1999), whether an owner or operator will receive reimbursements for cleaning up petroleum leaks is dependent upon a detailed statutory scheme under which claimants receive priority based on various factors, *see id.* §§ 25299.52–25299.58 (West 1999 & Supp. 2000). The State Board further asserts that, in this case, the denial of the Trustee's reimbursement claims was not based upon the nonpayment of fees, and that, therefore, the bankruptcy court could resolve the Mandamus Adversary without probing into the Lazars' payment of UST fees. Thus, the State Board contends that although the BOE's proofs of claims and the Trustee's claims in the Mandamus Adversary both revolve around the Fund and the Lazars' maintenance of underground storage tanks, the resolution of these

---

**12.** For the period after the Lazars voluntarily petitioned for bankruptcy, the bankruptcy court has determined that the correct amount of the BOE's claim for UST fees is $336,470.32, even though the BOE had initially asserted a $1.8 million claim. This judgment has not been appealed. There is insufficient information in the record to determine what amounts, if any, of the BOE's other proofs of claims are attributable to UST fees, and what amounts, if any, are attributable to sales and use taxes, local taxes, and fuel taxes. We hold that the BOE's non-UST-fee claims are not logically related to the Trustee's claims in the Mandamus Adversary.

**13.** Because under California law only the BOE may bring a claim to collect unpaid UST fees, *see supra* note 11, in assessing this question of waiver, we do not find it significant that the BOE and the State Board are separate state agencies.

claims involves wholly separate inquiries. We disagree.

The BOE's proofs of claims for unpaid UST fees and the Trustee's claims in the Mandamus Adversary both concern the Fund and both arise out of activities associated with the same bankruptcy case. While the BOE demands payments of fees to the Fund, the Trustee seeks reimbursement from the Fund for corrective actions taken on underground storage tanks. *See Straight,* 143 F.3d at 1392 (holding that "the proofs of claim filed by the State and the motion filed by Mrs. Straight arose out of the same transaction or occurrence—the Debtor's business"); *995 Fifth Ave. Assocs. v. New York State Dep't of Taxation & Fin. (In re 995 Fifth Ave. Assocs.),* 963 F.2d 503, 509 (2d Cir.1992) ("Thus, the appellee's claim for a tax refund arose from the same transaction or occurrence— the sale of the Stanhope Hotel—as the State's claim for additional taxes."). Moreover, the Fund collects fees from owners and operators of underground storage tanks for the ultimate purpose of paying reimbursement claims when those tanks leak petroleum. *See* Cal. Health & Safety Code §§ 25299.10, 25299.50– 25299.51 (West 1999 & Supp.2000). Therefore, we hold that the Trustee's claims against the State Board in the Mandamus Adversary are logically related to the proofs of claims filed by the BOE for unpaid UST fees. *See Pinkstaff,* 974 F.2d at 115; *see also Price v. United States (In re Price),* 42 F.3d 1068, 1073 (7th Cir.1994) ("The pertinent inquiry is whether the claim arises out of the same transaction or occurrence and not whether the claims are from the same transaction or occurrence."); *Albright v. Gates,* 362 F.2d 928, 929 (9th Cir.1966) ("In deciding what is a transaction, we take note that the term gets an increasingly liberal construction.").

Accordingly, because the BOE filed proofs of claim in the bankruptcy proceeding that arise out of the same transaction or occurrence as the Trustee's claims against the State Board in the Mandamus Adversary, the State Board has waived its Eleventh Amendment immunity in the Mandamus Adversary.[14]

### 2. Abrogation

In 11 U.S.C. § 106(b), Congress provided that when a state files a proof of claim in a bankruptcy case, the state "is deemed to have waived sovereign immunity with respect to a claim against such [state] that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such [state] arose." 11 U.S.C. § 106(b) (1994). Several courts have considered the issue of whether, by enacting §§ 106(a) and (b), Congress has abrogated the States' sovereign immunity. Some courts have found that §§ 106(a) and (b) are unconstitutional because the sections were enacted pursuant to Article I of the United States Constitution. *See e.g., Sacred Heart Hosp. v. Pennsylvania, Dep't of Pub. Welfare (In re Sacred Heart Hosp.),* 133 F.3d 237, 243–44 (3d Cir.1998) (holding 11 U.S.C. § 106(a), which purports to abrogate sovereign immunity, unconstitutional); *Department of Transp. & Dev. v. PNL*

---

**14.** The bankruptcy court also held, and the Trustee argues, that the State Board waived its Eleventh Amendment immunity in the Mandamus Adversary because the State of California made a "general appearance" in the underlying bankruptcy case in support of its position as one of the most substantial secured creditors in this case. This argument fails, to the extent it is distinct from the argument, analyzed above, that the State Board waived its Eleventh Amendment immunity under *Gardner.* Here, unlike other factual circumstances in which courts have been more receptive to this argument, the State Board immediately asserted an Eleventh Amendment defense in the Mandamus Adversary and moved for remand to state court. *Cf. Wisconsin Dep't of Corrections v. Schacht,* 524 U.S. 381, 393, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998) (Kennedy, J., concurring) ("Consent to removal, it can be argued, is a waiver of the Eleventh Amendment immunity."); *Hill,* 179 F.3d at 763 ("The Eleventh Amendment was never intended to allow a state to appear in federal court and actively litigate the case on the merits, and only later belatedly assert its immunity from suit in order to avoid an adverse result.").

*Asset Management Co. (In re Estate of Fernandez)*, 123 F.3d 241, 245 (5th Cir.) (same), *amended by* 130 F.3d 1138 (5th Cir.1997) (per curiam); *In re Creative Goldsmiths of Washington, D.C., Inc.*, 119 F.3d at 1147–48 (holding section 106(b) unconstitutional). Other courts have concluded that §§ 106(a) and (b) are constitutional because the Bankruptcy Code was enacted pursuant to Section 5 of the Fourteenth Amendment-which has long been recognized by the Supreme Court as a valid source of congressional power to abrogate state's Eleventh Amendment immunity.[15] *See e.g., In re Straight*, 209 B.R. 540, 555 (D.Wyo.1997) (concluding that application of the Fourteenth Amendment to Section 106 renders it constitutional), *aff'd*, 143 F.3d 1387 (10th Cir.), *cert. denied*, 525 U.S. 982, 119 S.Ct. 446, 142 L.Ed.2d 400 (1998); *In re: Headrick*, 200 B.R. 963, 967 (Bankr.D.Ga.1996) ("the Fourteenth Amendment allows debtors to enforce the provisions of the Bankruptcy Code in federal court notwithstanding the States' Eleventh Amendment immunity.").

Because we have determined that the state waived its Eleventh Amendment immunity rendering permissible the estate's counterclaim against the state, we refrain from reaching the question of the constitutionality of sections 106(a) or (b). *State of Maryland v. E.P.A.*, 530 F.2d 215, 227 (4th Cir.1975) ("[I]f a case can be decided on either of two grounds one involving a constitutional question, and the other, a question of statutory construction or general law, the court should decide on the basis of the latter."), *vacated on other grounds*, 431 U.S. 99, 97 S.Ct. 1635, 52 L.Ed.2d 166 (1977); *see e.g., Rose*, 187 F.3d at 930

(concluding that because the court found that the state had "waived its Eleventh Amendment immunity, [the court] need not reach issues of the constitutionality of the abrogation provision of § 106(a) and the statutory provision of § 106(b)").

### 3. Conclusion

In sum, we hold that because the BOE filed proofs of claims in the Lazars' bankruptcy case that are logically related to the Trustee's claims against the State Board in the Mandamus Adversary, the State Board has waived its Eleventh Amendment immunity in the Mandamus Adversary.

### B. Abstention

The State Board also argues that the bankruptcy court erred by not abstaining in the Mandamus Adversary, pursuant to 28 U.S.C. §§ 1334(c)(1) and 1334(c)(2).[16] In *Security Farms v. International Brotherhood of Teamsters*, 124 F.3d 999 (9th Cir.1997), however, we noted that "[a]bstention can exist only where there is a parallel proceeding in state court." *Id.* at 1009. Thus, we held that:

> Section 1334(c) abstention should be read in pari materia with section 1452(b) remand, so that [§ 1334(c) ] applies only in those cases in which there is a related proceeding that either permits abstention in the interest of comity, section 1334(c)(1), or that, by legislative mandate, requires it, section 1334(c)(2).

*Id.* at 1010. On March 22, 1996, the Trustee successfully removed the Mandamus Adversary from state court, and, as a result, "[n]o other related [state] proceeding thereafter exists." *Id.* Accordingly, be-

---

**15.** In the Supreme Court case, *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the Court held that Congress may not abrogate state's Eleventh Amendment immunity from suit in federal court pursuant to its powers under Article I. *Id.* at 72–73, 116 S.Ct. 1114. However, the *Seminole Tribe* Court still recognized Section 5 of the Fourteenth Amendment as a valid source of congressional power to abrogate states' Eleventh Amendment immunity. *Id.* at 59, 116 S.Ct. 1114.

**16.** Because the Lazars filed their bankruptcy petition prior to October 22, 1994, the amendments made to § 1334 by the Bankruptcy Reform Act of 1994 do not apply in this case. *See Wynns v. Wilson (In re Wilson)*, 90 F.3d 347, 350 (9th Cir.1996) (noting that "the Bankruptcy Reform Act of 1994 applies only in bankruptcy cases filed on or after October 22, 1994").

cause there is no pending state proceeding, §§ 1334(c)(1) and 1334(c)(2) are simply inapplicable to this case. *See id.* at 1009–10.[17]

■ Furthermore, to the extent that the State Board appeals the bankruptcy court's decision against remanding the Mandamus Adversary, and "to the extent that we are required to construe [the State Board's] motion to abstain as a motion to remand," *id.* at 1009, we lack jurisdiction over the appeal. 28 U.S.C. § 1452(b) (1994) (stating that "a decision to not remand ... is not reviewable by appeal or otherwise by the court of appeals"); *Security Farms*, 124 F.3d at 1009–10 & n. 7 ("Section 1452(b) prevents this court from reviewing a district court's decision not to remand.").

## III. TAX ADVERSARY

In the Tax Adversary, we are confronted with two distinct issues. The Fund appeals the district court's determination that it is not an "arm of the state" and thus cannot invoke Eleventh Amendment immunity. The Trustee cross-appeals the district court's order affirming the bankruptcy court's judgment that the fees paid into the Fund are "taxes" for the purposes of bankruptcy, pursuant to 11 U.S.C. § 507(a)(8). We examine each issue in turn.

### A. Arm of the State

We have jurisdiction under the collateral order doctrine to review the district court's denial of the Fund's claim that it is an arm of the State of California. *Metcalf & Eddy, Inc.*, 506 U.S. at 147, 113 S.Ct. 684. We review questions of Eleventh Amendment immunity de novo. *Hill*, 179 F.3d at 756.

■ In determining the Eleventh Amendment status of a defendant, "[t]here may be a question ... whether a particular suit in fact is a suit against a State." *Pennhurst*, 465 U.S. at 100, 104 S.Ct. 900. It is well established that the Eleventh Amendment's "reference to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. at 429, 117 S.Ct. 900.

■ We inquire into the relationship between the state and its instrumentality to decide whether it may invoke the state's immunity. *Id.* In particular,

[t]o determine whether a governmental agency is an arm of the state, the following factors must be examined: [1] whether a money judgment would be satisfied out of state funds, [2] whether the entity performs central governmental functions, [3] whether the entity may sue or be sued, [4] whether the entity has the power to take property in its own name or only the name of the state, and [5] the corporate status of the entity.

*Durning v. Citibank, N.A.*, 950 F.2d 1419, 1423 (9th Cir.1991) (quoting *Mitchell v. Los Angeles Community College Dist.*, 861 F.2d 198, 201 (9th Cir.1988)) (internal quotation marks omitted). "[W]hether a particular state agency ... is an arm of the State ... is a question of federal law. But that federal question can be answered only after considering the provisions of state law that define the agency's character." *Regents of the Univ. of Cal. v. Doe*, 519

---

**17.** In *Eastport Associates v. City of Los Angeles (In re Eastport Associates)*, 935 F.2d 1071 (9th Cir.1991), we reviewed the district court's order refraining from abstention under § 1334(c)(1), even though "no state court proceeding ha[d] been commenced in [the] case." *Id.* at 1079. The Mandamus Adversary is distinguishable from *Eastport Associates*, however, because the action in *Eastport Associates* was not removed to federal court.

See *id.* at 1078–79. Thus, the remand provisions of 28 U.S.C. § 1452(b) were inapplicable in *Eastport Associates*. See 28 U.S.C. § 1452(b). In this case, on the other hand, as in *Security Farms*, we are confronted with the interrelationship between § 1334(c) and § 1452(b). *See Security Farms*, 124 F.3d at 1010 ("To require a pendant state action as a condition of abstention eliminates any confusion with 28 U.S.C. § 1452(b)....").

U.S. at 429 n. 5, 117 S.Ct. 900. On balance, we hold that the five *Durning* factors compel the conclusion the Fund is an arm of the State of California.

The first factor, namely "whether a judgment against the [Fund] under the terms of the [Tax Adversary] complaint would have to be satisfied out of the limited resources of the [Fund] itself or whether the state treasury would also be legally pledged to satisfy the obligation," *ITSI TV Prods., Inc. v. Agricultural Ass'ns*, 3 F.3d 1289, 1292 (9th Cir.1993) (quoting *Durning*, 950 F.2d at 1424) (internal quotation marks omitted), provides little guidance in this case. That is, in the Tax Adversary, the Trustee seeks from the Fund both reimbursement for the "improper payment of fees" and actual damages, and these differing claims point us in different analytical directions.

More precisely, under California law, the Trustee's reimbursement claims would be "paid only out of the [F]und," Cal. Health & Safety Code § 25299.60(b) (West 1999), and "the [California] state treasury is not liable," *Durning*, 950 F.2d at 1425; *see* Cal. Health & Safety Code § 25299.60. Thus, to the extent the Trustee seeks reimbursement from the Fund in the Tax Adversary, this first factor weighs against an arm-of-the-state finding. *See Durning*, 950 F.2d at 1424–26 ("When a state entity is structured so that its obligations are its own special obligations and not general obligations of the state, that fact weighs against a finding of sovereign immunity under the arm of the state doctrine."). As to the Trustee's non-reimbursement, damages claims, however, no statute specifically protects the state treasury from a court judgment against the Fund, and, in fact, California law provides that when the Fund sunsets, all of its liabilities shall be transferred to the state's general fund. Cal. Gov't Code § 16346 (West 1995) (providing that whenever a special fund in the state treasury is abolished, and no successor fund is specified in the act providing for abolition, all of the special fund's liabilities shall be transferred to and become a part of the general fund). Thus, to the extent the Trustee seeks not reimbursement, but actual damages from the Fund in the Tax Adversary, this factor appears to weigh in favor of an arm-of-the-state finding. In short, this first factor "is a close question and for this reason is entitled to little weight in the overall balance." *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 254 (9th Cir.1992).

The second factor in our arm-of-the-state inquiry, however, is not uncertain, and it weighs strongly in favor of finding that the Fund is an arm of the state. The Fund "performs central governmental functions," *Rounds*, 166 F.3d at 1035, and "California exercises substantial centralized control over the [Fund]," *Belanger*, 963 F.2d at 253; *see also Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir.1995) (noting that, in performing an arm-of-the-state analysis, a court must "assess the extent to which the entity 'derives its power from the State and is ultimately regulated by the State.'" (quoting *Greater Los Angeles Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1110 (9th Cir.1987))).

The California legislature created the Fund to protect "public health and safety and the environment" in light of the perception that "a significant number of the underground storage tanks containing petroleum in the state may be leaking." Cal. Health & Safety Code § 25299.10(b)(1), (3) (West 1999 & Supp.2000). Nonetheless, the Trustee argues that the Fund was enacted primarily for the financial benefit of tank owners. In particular, he characterizes the Fund as an insurance measure sponsored by a service-station lobby and as a means by which underground storage tank owners and operators may comply with their federal financial-responsibility requirements.

That the Fund works to the benefit of owners and operators of underground storage tanks does not diminish its public importance. Rather, the language of the authorizing statute demonstrates that the Fund performs services that benefit owners and operators for the purpose of pro-

tecting the public health. *Id.* § 25299.10(b)(5), (6) (West 1999 & Supp. 2000) ("There are long-term threats to public health and water quality if a comprehensive, uniform, and efficient corrective action program is not established. . . . It is in the best interest of the health and safety of the people of the state to establish a fund to pay for corrective action where coverage is not available.").

Moreover, the California Health and Safety Code is replete with provisions establishing that the state is both the Fund's source of power and its ultimate regulator. For example, section 25299.50(a) provides that the Fund is created in the state treasury. *See id.* § 25299.50(a). This same section authorizes the State Board to expend the Fund's monies "upon appropriation by the Legislature." *Id.* Therefore, we conclude that the Fund "derives its power from the State." *Franceschi,* 57 F.3d at 831.

We also conclude that the Fund is ultimately regulated by the state through the State Board. By statute, the State Board must "report at least once every three months on the [payment of claims from the Fund] to the Senate Committee on Budget and Fiscal Review, the Senate Committee on Environmental Quality, the Assembly Committee on Budget, and the Assembly Committee on Environmental Safety and Toxic Materials, or to any successor committee, and to the Director of Finance." Cal. Health & Safety Code § 25299.50(c)(2) (West Supp.2000). Additionally, the State Board has statutory authority to "modify existing accounts or create accounts in the [F]und or other funds administered by the board, which the board determines are appropriate or necessary for proper administration." *Id.* § 25299.50(a) (West 1999 & Supp.2000). The state's regulation of the Fund is also manifested through the BOE's statutory authority to adopt regulations to carry out its role as the collector

of Fund fees. *See id.* § 25299.42(a) (West 1999).

Accordingly, we find that this second factor weighs heavily in favor of finding that the Fund is an arm of the state.

As for the remaining factors, the California legislature has not granted the Fund corporate status or given it the power to take property in its own name. Thus, these two factors weigh in the Fund's favor. *See Durning,* 950 F.2d at 1427. Finally, the Fund admits that it may sue or be sued in its own name, which would weigh against an arm-of-the-state finding. *See id.* at 1427. Although recent legislation adds some uncertainty to this admission, *compare* Cal. Health & Safety Code § 25299.52(g) (West 1999) ("The fund may sue and be sued in its own name."), *with id.* § 25299.52 (West.Supp.2000) (deleting subsection (g), pursuant to 1999 legislative amendments), this factor does not turn the balance in any event.

For the foregoing reasons, then, we must conclude that, on balance, the Fund is an arm of the State of California, thereby entitled to invoke Eleventh Amendment immunity.[18] In reaching this conclusion, we find it most significant that the California legislature established the Fund to serve the central governmental function of ensuring safe and healthy water resources for the state's citizens.

### B. Fees as Taxes

▇▇▇ The Trustee has cross-appealed in the Tax Adversary, arguing that the district court erred in finding that the fees paid into the Fund are taxes under 11 U.S.C. § 507(a)(8). Because we lack jurisdiction over this non-final judgment, however, we cannot consider the Trustee's appeal.

Under 28 U.S.C. § 158(d), we "have jurisdiction of appeals from all final decisions,

---

**18.** Whether the Fund, as opposed to the State Board, waived its Eleventh Amendment immunity is not before us on this appeal. We therefore leave that question to the bankrupt-

cy court on remand. In answering this question, the bankruptcy court may find guidance in our discussion of the State Board's waiver of immunity. *See supra* Part II.A.1.

judgments, orders, and decrees entered under" 28 U.S.C. § 158(a). 28 U.S.C. § 158(d) (1994). 28 U.S.C. § 158(a) in turn provides that "[a] district court has jurisdiction over a bankruptcy appeal from: (1) final judgments, orders, or decrees, and (2) interlocutory orders with leave from the bankruptcy court." *Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.),* 177 F.3d 774, 779 (9th Cir.1999) (citing 28 U.S.C. § 158(a)(1), (3)). The Trustee "did not seek or obtain leave from the bankruptcy court to appeal. Thus, the district court had jurisdiction over the appeal, if at all, as a final judgment." *Id.*

 "[T]his court has adopted a 'pragmatic approach' to finality in bankruptcy cases." *Id.* at 780. "This 'pragmatic approach' ... focuses on whether the decision appealed from 'effectively determined the outcome of the case.'" *Elliott v. Four Seasons Properties (In re Frontier Properties, Inc.),* 979 F.2d 1358, 1363 (9th Cir.1992) (quoting *In re Mason,* 709 F.2d 1313, 1318 (9th Cir.1983)). Specifically, "[a] bankruptcy court order is final and thus appealable 'where it 1) resolves and seriously affects substantive rights and 2) finally determines the discrete issue to which it is addressed.'" *Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis),* 113 F.3d 1040, 1043 (9th Cir.1997) (quoting *In re Frontier Properties, Inc.,* 979 F.2d at 1363). "[T]raditional finality concerns nonetheless dictate that we avoid having a case make two complete trips through the appellate process." *Id.* (internal quotation marks and citations omitted).

In response to the Trustee's motion for partial summary judgment, the bankruptcy court ruled that "[t]he Fees imposed by Article 5 of Chapter 6.75 of the California Health & Safety Code are taxes for the

purposes of 11 U.S.C. § 507(a)(8)." The Trustee argues that this ruling is final under § 158(a) because the court's "characterization [of the monies paid into the Fund] will determine the priority of payments ... because taxes have priority and fees do not." We reject the Trustee's argument.

 It is true, of course, that the Bankruptcy Code grants priority status to "taxes." 11 U.S.C. § 507(a)(8) (1994). The Tax Adversary, however, is, at its core, an action by the Trustee seeking equitable subordination [19] of the BOE's postpetition claims for UST fees. In *United States v. Noland,* 517 U.S. 535, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996), and *United States v. Reorganized CF & I Fabricators, Inc.,* 518 U.S. 213, 116 S.Ct. 2106, 135 L.Ed.2d 506 (1996), the Supreme Court held that "[d]ecisions about the treatment of *categories* of claims in bankruptcy proceedings ... are not dictated or illuminated by principles of equity and do not fall within the judicial power of equitable subordination." *Noland,* 517 U.S. at 541 (emphasis added) (omission in original) (quoting *Burden v. United States,* 917 F.2d 115, 122 (3d Cir.1990) (Alito, J., concurring in part and dissenting in part)) (internal quotation marks omitted); *accord Reorganized CF & I Fabricators, Inc.,* 518 U.S. at 229, 116 S.Ct. 2106 ("The principle is simply that categorical reordering of priorities that takes place at the legislative level of consideration is beyond the scope of judicial authority to order equitable subordination under § 510(c)."). In so doing, however, the Supreme Court reaffirmed what is relevant to this case: that " 'principles of equitable subordination' permit[ ] a court to make exceptions to a general rule when justified by particular facts." *Noland,* 517 U.S. at 535, 116 S.Ct. 1524; *see*

---

**19.** "Equitable subordination requires that (1) the claimant who is to be subordinated has engaged in inequitable conduct; (2) the misconduct results in injury to competing claimants or an unfair advantage to the claimant to be subordinated; and (3) subordination is not inconsistent with bankruptcy law." *Paulman*

*v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.),* 163 F.3d 570, 583 (9th Cir. 1998) (quoting *Spacek v. Thomen (In re Universal Farming Indus.),* 873 F.2d 1334, 1337 (9th Cir.1989)) (internal quotation marks omitted).

also *Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.),* 163 F.3d 570, 583 (9th Cir.1998) (noting that "equitable subordination requires that . . . the claimant who is to be subordinated has engaged in inequitable conduct"). The Trustee alleges such "particular facts" and "inequitable conduct" in his Tax Adversary complaint. Thus, if the bankruptcy court rules in favor of the Trustee on his equitable-subordination claim, the BOE's claims for UST fees, be they "taxes" or not, will be subordinated. *See Noland,* 517 U.S. at 535, 116 S.Ct. 1524.[20]

Because the bankruptcy court's order did not "resolve the question of priority," then, it is not final. *United States v. Stone (In re Stone),* 6 F.3d 581, 583 n. 1 (9th Cir.1993); *accord Christian Life Ctr. Litig. Defense Comm. v. Silva (In re Christian Life Ctr.),* 821 F.2d 1370, 1373 (9th Cir.1987) (holding that the bankruptcy court's order was final and appealable because it "finally determined the question of subordination of officers' indemnity claims" and "[n]o further action on this issue [wa]s contemplated or necessary"); *see also In re P.R.T.C., Inc.,* 177 F.3d at 780 (noting that, to be "final," a bankruptcy order must "finally determine[ ] the discrete issue to which it is addressed" and "resolve[ ] and seriously affect[ ] substantive rights"). The district court, therefore, did not have jurisdiction under § 158(a). 28 U.S.C. § 158(a); *In re P.R.T.C., Inc.,* 177 F.3d at 779 (explaining the district court's jurisdiction over bankruptcy appeals). And "we do not have jurisdiction to review cases in which the district court affirms an order of the bankruptcy court that is not final." *Vylene Enters., Inc. v. Naugles, Inc. (In re Vylene Enters., Inc.),*

968 F.2d 887, 895 (9th Cir.1992). Accordingly, we dismiss the Trustee's cross-appeal.[21]

## IV. CONCLUSION

In the Mandamus Adversary, we hold that the State Board is an arm of the State of California, but that it has waived its Eleventh Amendment immunity. Accordingly, we affirm in part and reverse in part the district court's judgment that the State Board enjoys no Eleventh Amendment immunity in the Mandamus Adversary. We also dismiss the State Board's abstention appeal for lack of jurisdiction.

In the Tax Adversary, we hold that the Fund is an arm of the state, and we therefore reverse the district court's judgment to the contrary and remand for further proceedings. Finally, we dismiss the Trustee's cross-appeal for lack of jurisdiction.

AFFIRMED in part, REVERSED in part, DISMISSED in part, and REMANDED.

---

**20.** Indeed, in his motion in the bankruptcy court for partial summary judgment on the taxes-versus-fees question, the Trustee argued only that "the [BOE's] claim for Fees . . . can be *more easily equitably subordinated* as pled in the complaint because they are not taxes." (emphasis added).

**21.** The State Appellants' motion to strike portions of the Trustee's reply brief is Granted. The Trustee's appeal in this case was limited to the two issues discussed above relating to the Tax Adversary. On February 12, 1998, we issued an order stating that the Trustee may file a reply brief for his appeal. Because portions of the Trustee's reply brief discuss issues extending beyond the subject matter of his appeal, we are compelled to order those portions stricken so as not to unfairly disadvantage the State Appellants in resolving the Trustee's appeal.